UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHARON GOLDZWEIG,

                          Plaintiff,

      -against-

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC.,

                       Defendant.

:    <u>MEMORANDUM DECISION
AND ORDER</u>

:    20 Civ. 4297 (GBD) (JW)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Sharon Goldzweig brings this action against her former employer, Consolidated Edison Company of New York, Inc. ("Con Edison"), for age and gender-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (Complaint, ECF No. 1.) Plaintiff alleges that Defendant discriminated against her by terminating her in January 2019. (*Id.* ¶¶ 47–48.) Plaintiff further alleges that Defendant retaliated against her by terminating her after she complained about her supervisor's treatment towards her. (*Id.* ¶¶ 39, 47–48.)

Before this Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff's claims. (Notice of Motion, ECF No. 83.) Defendant's motion is GRANTED.

## I.    FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff is a former Associate Counsel for employee benefits in the Labor, Employment, Benefits and Workers Compensation section ("Labor and Employment Group") of Con Edison's Law Department ("Law Department"). (Def.'s Statement of Undisputed Material Facts ("SOMF"), ECF No. 92, ¶ 2.) She was employed with Defendant Con Edison for 20 years. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s SOMF"), ECF No. 95, ¶ 5.)

As detailed in the record, both Law Department senior leadership and Plaintiff's supervisors perceived issues with Plaintiff's performance during her time at Con Edison. In particular, Law Department employees noted consistent issues with Plaintiff's writing and communication skills, and her ability to work with outside counsel.

Phyllis Taylor, Vice President of Legal Services, and Elizabeth Moore, Senior Vice President and General Counsel, both noted problems with Plaintiff's performance. Taylor believed that Plaintiff had trouble with drafting legal memoranda, articulating legal positions clearly, and writing. (SOMF ¶ 121.) Additionally, in 2015, Taylor issued and memorialized a verbal counseling to Plaintiff following a phone call in which Plaintiff chided an associate from outside counsel. (*Id.* ¶¶ 109, 113.) Similarly, Moore testified about her concerns with Plaintiff's oral and written communication skills and her ability to work with outside counsel. (*Id.* ¶¶ 67, 106.) Moore testified that she found it so frustrating to work with Plaintiff that she actively avoided engaging with her starting in 2011 or 2012. (*Id.* ¶ 67; Moore Dep. Tr. at 246:21–23, 256:4–13.)

Several of Plaintiff's supervisors also noted issues with her performance. Richard Levin, Associate General Counsel, assumed supervision over Plaintiff in 2014. (SOMF ¶ 50.) Levin issued Plaintiff's 2014 Performance Review, in which she received "Needs Improvement" ratings

for "Business Acumen" and "Emotional Intelligence," but an overall rating of "Fully Effective." (*Id.* ¶ 86.) In 2015, Levin issued Plaintiff's Mid-Year Review, in which she was rated as "Not on Target" to meet her developmental goals outlined in her 2014 Performance Review. (*Id.* ¶¶ 98, 99.) The Review stated that "[s]ignificant and sustained improvement [was] needed." (Decl. of Jeremiah Iadevaia dated June 28, 2024 ("Iadevaia Decl."), ECF No. 97, Ex. 60 at 2.) Levin also issued Plaintiff's 2015 Performance Review, in which she received an overall rating of "Needs Some Improvement." (SOMF ¶ 101.) Levin believed Plaintiff performed at the level of a junior attorney and that a senior attorney with her experience should have already mastered the developmental goals he outlined in her 2015 Performance Review. (*Id.* ¶ 102).

From September 2016 until his September 2018 termination, Associate General Counsel of the Labor and Employment Group Steven Scotti assumed direct supervision of Plaintiff. (*Id.* ¶¶ 35, 51.) Scotti provided feedback in Plaintiff's 2017 review consistent with that of others, including that she needed to continue her efforts "to prepare concise and cogent research memoranda" and "continue working on developing a more structured and linear approach to advice-giving, whether oral or written." (Iadevaia Decl., Ex. 17 at 2.) Scotti also testified regarding his early impressions of Plaintiff's performance between 2002 and 2016. (Scotti Dep. Tr. at 98:12–100:12.) Between 2002 and 2013, Scotti observed that while Plaintiff had significant institutional knowledge, "her communication skills were not very good and needed to be improved," and did not in fact improve during the time period. (*Id.* at 98:19–23, 100:2–8.) From 2013 until 2018, Scotti believed that Plaintiff was a satisfactory employee, but "her drafting skills were poor." (*Id.* at 100:9–16, 102:9–16.)

Following Scotti's termination, Christopher D'Angelo assumed the role of Associate General Counsel of the Labor and Employment Group, and assumed direct supervision of Plaintiff

on November 1, 2018. (SOMF ¶ 160.) D'Angelo testified that he observed Plaintiff's written and verbal skills were poor, she was disorganized, and there were instances in which Plaintiff was unable to provide clear and direct answers to questions. (*Id.* ¶ 179.)

Shortly after D'Angelo assumed supervision of Plaintiff, she made a series of complaints about his behavior towards her. The first came on November 30, 2018, when Plaintiff met with deputy Ombudsperson Nelson Yip. (*Id.* ¶ 184.) Plaintiff testified that she approached Yip because she "felt targeted," as D'Angelo treated her differently from everyone else in her group. (Goldzweig Dep. Tr. at 377:11–18.) During the meeting, Plaintiff told Yip that D'Angelo was contemptuous, critical, and harsh towards her. (Goldzweig Dep. Tr. at 294:8–10.) She also articulated her preference for Scotti's management style as compared to D'Angelo's and sought advice on how to better work with her new supervisor. (SOMF ¶ 185; Yip Dep. Tr. at 105:5–12.)

In December 2018, Plaintiff complained to Levin about D'Angelo's tone and attitude towards her. (SOMF ¶ 189.) She stated that she believed he was "picking on" her because of her age, gender, and religion. (*Id.* ¶ 189.) Levin told Plaintiff that if she believed she had been discriminated against, she should file a complaint with Con Edison's Office of Diversity and Inclusion ("ODI") (*Id.* ¶ 191.)

On December 31, 2018, Plaintiff filed a complaint with ODI and participated in an initial intake interview. (*Id.* ¶ 196.) During the intake interview, Plaintiff said that D'Angelo was "difficult, nasty, and disrespectful." (Iadevaia Decl., Ex. 54 at 1.) However, "she could not say the behavior was related to any of her protected characteristics[] (age, gender, or religion)." (*Id.*)

On January 2, 2019, Plaintiff had a second interview with ODI during which she complained about D'Angelo's tone and compared him to her former supervisor Scotti. (*Id.* at 2.; SOMF ¶ 198.)  Plaintiff stated "I am a 64-year-old Jewish woman" three times during the

interview. (Iadevaia Decl., Ex. 54 at 3, fn. 1.) However, when asked whether she believed that D'Angelo's behavior was because of any of her protected characteristics, such as age, gender, or religion, she replied that she did not know. (*Id.* at 4.) Plaintiff admits that during the interview, she did not identify any ageist or sexist remarks that D'Angelo had made. (Pl.'s SOMF ¶ 199.) Following the interview, ODI did not open a discrimination investigation, as it did not identify any Equal Employment Opportunity basis for Plaintiff's complaints. (SOMF ¶ 200; Iadevaia Decl., Ex. 55 at 5.) The final ODI report found Plaintiff's complaint to be "Unfounded / Without Merit." (*Id.*)

The Parties dispute whether D'Angelo, Moore, and Taylor all participated in the decision-making process leading to Plaintiff's termination. (*See* Pl.'s Mem. Of Law in Opp. to Defs.' Mot. For Summ. J. ("Opp."), ECF No. 101, at 24.) However, there is no dispute that D'Angelo ultimately met with Plaintiff and terminated her employment on January 3, 2019. (SOMF ¶ 170.) D'Angelo prepared termination talking points which cited to concerns with Plaintiff's performance, including her ineffective communication and interaction with outside counsel. (SOMF ¶ 169; Decl. of Ephraim J. Pierre dated Apr. 15, 2024 ("Pierre Decl."), ECF No. 90, Ex. GG at 2–3.) Plaintiff was 64 years old at the time of her termination. (Decl. of Sharon Goldzweig dated June 28, 2024, ECF No. 96, ¶ 29.) Following Plaintiff's termination of employment, Con Edison posted a job listing for her position. (SOMF ¶ 173.) On December 12, 2020, Merryl Gordon, a 54-year-old woman, was hired for the position. (*Id.* ¶ 173–74.) Gordon remains

employed at Con Edison as an Associate Counsel for employee benefits and reports directly to D'Angelo. (*Id.* ¶ 174.)

## II.    LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Id.* (citing *Anderson,* 477 U.S. at 255). However, to defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

## III.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

Plaintiff's Complaint brings eight causes of action under federal, state, and city law for age and gender-based discrimination and unlawful retaliation. (*See generally*, Compl.) Summary judgment is granted for Defendant on all claims.

### A. Plaintiff Fails to Establish a Prima Facie Case of Age Discrimination

Plaintiff's Second, Fifth, and Seventh Causes of Action allege that Defendant discriminated against her on the basis of her age in violation of the ADEA, the NYSHRL, and the NYCHRL.

Under the ADEA, it is "unlawful for an employer . . . to . . . discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Claims under the ADEA and the NYSHRL are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (applying *McDonnell Douglas* framework to age discrimination claims under the ADEA); *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) (applying framework to

NYSHRL). Within this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (citation omitted). To establish a prima facie case, the plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo*, 691 F.3d at 129 (citation and internal quotation marks omitted). "Although the burden at the initial stage of the *McDonnell Douglas* analysis is 'minimal,' [a plaintiff] must adduce some evidence to support . . . his prima facie discrimination claims to avoid summary judgment." *Jimenez v. Donahoe*, 968 F. Supp. 2d 609, 620 (S.D.N.Y. 2013) (quoting *Scoria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997)). If the plaintiff makes a prima facie case, the employer must "offer a legitimate, nondiscriminatory reason for its employment decision." *Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir. 1999). If the employer articulates such a reason, "the plaintiff must then show that the proffered reason was a pretext for age discrimination." *Id.* (citation omitted).

The standard under the NYCHRL is more liberal. To establish a discrimination claim under the NYCHRL, the plaintiff need only show that the employer treated her less well, at least in part for a discriminatory reason. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

### 1.  Discrimination Under the ADEA and NYSHRL

Plaintiff's federal and state age discrimination claims fail at the fourth step of the *McDonnell Douglas* analysis because Plaintiff has not raised any inference of discrimination as to her termination. Inference of discrimination is a "flexible [standard] that can be satisfied differently in differing factual scenarios." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91

(2d Cir. 1996). However, at the summary judgment stage, a plaintiff cannot simply "cite to [her] mistreatment and ask the court to conclude that it must have been" due to her age. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001). Rather, she is "required to adduce sufficient evidence to permit a reasonable jury to find that 'but-for' defendants' age bias, [s]he would not have been terminated." *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012). Accordingly, an employer is entitled to summary judgment if the employee "has not proffered evidence beyond 'conclusory allegations or unsubstantiated speculation,' sufficient to raise a triable issue of fact as to whether [the employer's] alleged age-based discriminatory animus was the 'but-for' cause—or, indeed, any cause at all" of the employer's actions. *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012) (citation omitted).

Here, Plaintiff attempts to raise an inference of discrimination by comparing her treatment to that of other Con Edison Law Department employees. (Opp. at 10–12.) Showing "disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside h[er] protected group" is one way of raising an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quotation omitted). A plaintiff attempting to prove discrimination through disparate treatment must show that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted). An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's

decision." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

Plaintiff asserts that D'Angelo criticized her status reports for lacking detail but did not criticize the less detailed reports of two younger attorneys.[1] (Opp. at 11.) Plaintiff also alleges that younger attorneys had issues with writing and communication but were not fired, while she was. (*Id.* at 12.) Finally, Plaintiff makes the general assertion that D'Angelo subjected her to "humiliating and differential treatment in contrast to his supervision of younger and/or male L&E group attorneys." (*Id.* at 10.) She argues that she was "singl[ed] out" for mistreatment by D'Angelo and that he exhibited "hostility" towards her. (*Id.* at 11.) In each instance, Plaintiff has failed to provide evidence of disparate treatment.

While Plaintiff alleges that D'Angelo exhibited differential treatment by criticizing her status reports while accepting less detailed status reports from two younger employees, she fails to show that D'Angelo's actions were motivated by age animus instead of routine business decisions. Where a "[p]laintiff's primary evidence of age discrimination . . . rest[s] on comparisons of workload and treatment with that of . . . a [younger] coworker" without evidence that any actions were motivated by age, her claim cannot "survive summary judgment." *Sampson v. City of New York*, No. 07 Civ. 2836 (BSJ)(RLE), 2009 WL 3364218, at *4–5 (S.D.N.Y. Oct. 19, 2009).

Plaintiff's asserts that she received disparate treatment because two younger employees also received negative feedback about their writing and communication skills but were not fired. (Opp. at 12.) In order for Plaintiff to show that the two employees were similarly situated, they "must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Sampson*,

---

[1] Lynelle Slivinski was a 44-year-old female. (Pl.'s SOMF ¶ 233.) Paul Limmiatis was a 55-year-old male. (*Id.*)

2009 WL 3364218, at *4 (citation omitted); *see Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997). However, there are notable differences between Plaintiff and the two employees. Defendant has presented evidence that several Law Department employees perceived and documented problems with Plaintiff's performance over several years. In contrast, Plaintiff points to a single instance in which each of the two younger employees received negative performance feedback. (Pl.'s SOMF ¶ 328.) Thus, Plaintiff has not established that she and the younger employees were similarly situated.

Finally, Plaintiff asserts general allegations of mistreatment by D'Angelo. However, being "singled out" for mistreatment alone does not give rise to an actionable claim under the ADEA or the NYSHRL. (Opp. at 11); *see Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable . . . only when it occurs because of an employee's . . . protected characteristic."); *Monachino v. Bair*, 769 F.Supp.2d 431, 439 (S.D.N.Y. 2011), *aff'd*, 481 F. App'x 20 (2d Cir. 2012) (Plaintiff "insists that he was singled out for unfair treatment. Yet he has not presented any evidence, such as discriminatory comments or disparate treatment of employees similarly situated to [plaintiff], from which a reasonable factfinder could conclude that the [employer's] actions were based on a protected characteristic."). Importantly here, Plaintiff has not identified a single Law Department employee who ever made any age-based disparaging or discriminatory comments towards her. *Francis v. Pactiv Corp.*, No. CV 04-0417(WDW), 2007 WL 879672, at *13 (E.D.N.Y. Mar. 21, 2007) ("While evidence of direct discriminatory comments [is] not necessary to sustain case alleging discrimination, the absence of such comments may be considered by the court."). Plaintiff's unsubstantiated allegations are insufficient to give rise to an inference of discrimination. *See Saenger v. Montefiore Medical*

*Center*, 706 F.Supp.2d 494, 514 (S.D.N.Y. 2010) ("vague claims of differential treatment alone do not suggest discrimination").

Plaintiff's other arguments fare no better. Plaintiff argues that Con Edison's mandatory retirement policy for officers reflects company bias. (Opp. at 12–13.) However, as Plaintiff herself acknowledges, the policy did not apply to her as a non-officer. (Opp. at 13.) Thus, Con Edison's mandatory retirement policy does not support an inference of discrimination. *Zurich Am. Life Ins. Co. v. Nagel*, 590 F.Supp.3d 702, 714, n. 13 (S.D.N.Y. 2022) (rejecting plaintiff's claim that inapplicable policy was material evidence of discrimination).

Plaintiff further argues that upon her termination, her duties were transferred to a significantly younger employee, raising an inference of discrimination. (Opp. at 7.) However, it is undisputed that a 54-year-old woman ultimately assumed Plaintiff's position upon completion of Con Edison's search for a replacement. (SOMF ¶ 174.) Thus, Plaintiff's replacement by a 54-year-old, who was both part of Plaintiff's protected class and insignificantly younger, fails to give rise to an inference of discrimination. *Lomonoco v. Saint Anne Inst.*, 768 F. App'x 43, 44 (2d Cir. 2019) ("no inference of age discrimination can be drawn from the replacement of one worker with another worker insignificantly younger") (quotation omitted); *Inguanzo v. Hous. & Servs., Inc.*, No. 12-CV-8212 (ER), 2014 WL 4678254, at *19 (S.D.N.Y. Sept. 19, 2014) (replacement of same protected class "severely undercuts" discrimination claim).

Finally, Plaintiff argues that there was a "sudden and unexpected downturn" in Con Edison's evaluation of Plaintiff's performance upon the arrival of D'Angelo, which supports an inference of his bias. (Opp. at 12.) However, Defendant has presented evidence of consistent concerns regarding Plaintiff's performance long before D'Angelo's arrival and Plaintiff's termination. *See supra* section I.

12

In short, Plaintiff has presented no competent evidence that her termination was the result of age discrimination. *See, e.g., Simpri v. City of N.Y.*, No. 00 Civ. 6712 (SAS), 2003 WL 23095554, at *3 (S.D.N.Y. Dec. 30, 2003) ("Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination.") (internal quotation marks omitted). Plaintiff's conclusory and subjective allegations that her mistreatment must be the result of her age is insufficient to sustain her claims at summary judgment. *Mattera v. JPMorgan Chase Corp.*, 740 F.Supp.2d 561, 575 (S.D.N.Y. 2010) (subjective beliefs cannot preclude summary judgment). The Court therefore dismisses Plaintiff's Second and Fifth Causes of Action.

### 2. Discrimination Under the NYCHRL

Plaintiff's NYCHRL claim fares no better. As discussed above regarding her ADEA and NYSHRL claims, Plaintiff fails to show that age animus played any role in her termination, or that she was ever treated less well because of her age. Plaintiff's Seventh Cause of Action is therefore dismissed.

### B. Plaintiff Fails to Establish a Prima Facie Case of Gender Discrimination

Plaintiff's First, Fifth, and Seventh Causes of Action allege that Defendant discriminated against her on the basis of her gender in violation of Title VII, the NYSHRL, and the NYCHRL.

As with ADEA claims, Title VII claims generally fall under the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792, 803–05; *see Lam v. Sephora USA Inc.*, 488 F. App'x 487, 489 (2d Cir. 2012); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). The Court reviews discrimination claims under Title VII and the NYSHRL identically. *See Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) (claims brought under federal law and the NYSHRL "are analyzed identically") (citation omitted).

Plaintiff's city law discrimination claim again falls under the NYCHRL's more liberal standard that her employer treated her less well, at least in part for a discriminatory reason. *Mihalik*, 715 F.3d at 110.

### 1. Gender Discrimination Under Title VII and NYSHRL

Plaintiff's federal and state gender discrimination claims fail at the fourth step of the *McDonnell Douglas* analysis because Plaintiff has not raised any inference of gender discrimination as to her termination. To support an inference of discriminatory intent, a Title VII plaintiff must allege facts supporting her claim that her "race, color, religion, sex, or national origin was a motivating factor in the employment decision" about which she complains. *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." *Id.* (quoting *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)).

Plaintiff contends that she was subjected to treatment different than that of her male counterparts. She again points specifically to D'Angelo's feedback on her status reports as compared to his feedback to the male employee, and generally to D'Angelo's "humiliating and differential treatment." (Opp. at 10–11.) However, as discussed above, these allegations are insufficient to give rise to an inference of discrimination. Just as Plaintiff failed to show age motivated D'Angelo's actions regarding her status reports, she has failed to show any evidence of gender animus. *See Sampson*, 2009 WL 3364218, at *4–5. Furthermore, as explained, Plaintiff's general allegations of mistreatment fail to give rise to any inference of gender discrimination. *See*

*Brown*, 257 F.3d at 252 ("It is axiomatic that mistreatment at work . . . is actionable . . . only when it occurs because of an employee's . . . protected characteristic.").

Plaintiff also argues that D'Angelo made comments regarding her appearance and smell that show sex-based animus. (Opp. at 11.) However, Plaintiff has failed to offer concrete, substantial evidence regarding any such comments. Plaintiff's only evidence regarding alleged sexist comments comes from her own vague deposition testimony. (Goldzweig Dep. Tr. at 281:15– 18.) ("I think I was criticized for my clothing. I think I was criticized for the oil I put on my skin. Everything was criticized, if you will.") When asked specifically when D'Angelo criticized her clothing and what he said, Plaintiff responded, "I don't recall." (Goldzweig Dep. Tr. at 282:21– 283:6.) Similarly, Plaintiff testified that she could not recall any specific comments D'Angelo made regarding the oil on her skin. (Goldzweig Dep. Tr. at 284:13–15) ("I think he suggested he didn't – he said, oh, I don't know – he made a comment about my smell."). Thus, Plaintiff has not adduced sufficient evidence to support an inference of discrimination.

Ultimately, Plaintiff has failed to offer concrete evidence of gender discrimination. Importantly, both Plaintiff's temporary and permanent replacements were women, which further undercuts an inference of discrimination. (SOMF ¶ 173; Opp. at 7); *Inguanzo*, 2014 WL 4678254, at *19 (replacement of same protected class "severely undercuts" discrimination claim). The Court therefore dismisses Plaintiff's First and Fifth Causes of Action.

## 2. Discrimination Under the NYCHRL

Plaintiff has failed to adduce evidence to support a claim that Defendant treated her "less well" on the basis of her gender. Plaintiff has offered no evidence to support her hypothesis that the reason motivating D'Angelo's actions was gender animus. Plaintiff's subjective belief that that

is the case, without more, is insufficient to sustain her claims. Plaintiff's Seventh Cause of Action is therefore dismissed.

### C. Plaintiff has Not Established a Case of Retaliation under Federal and State Law

Plaintiff's Third, Fourth, Sixth, and Eighth Causes of Action allege that Defendant unlawfully retaliated against her after she made protected complaints to (1) Nelson Yip, Deputy Ombudsman, in December 2018; (2) Richard Levin in December 2018; (3) the ODI in December 2018; and (4) the ODI in January 2019. To establish a prima facie case of retaliation under Title VII, the ADEA, and the NYSHRL, a plaintiff must show that (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013); *Ferrara v. Sterling, Inc.*, No. 23-0454-cv, 2024 WL 485742, at *2–3 (2d Cir. Feb. 8, 2024) (analyzing ADEA and the NYSHRL retaliation claims under *McDonnell Douglas* framework). Once a prima facie case of retaliation is established, the burden shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action. *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

Plaintiff argues that four complaints she made between December 2018 and January 2019 qualify as protected activity. However, in three of the four instances, Plaintiff has failed to show that she engaged in protected activity.

Protected activity includes not only the filing of formal charges of discrimination, but also "informal protests of discrimination, including complaints to management." *La Grande v.*

16

*DeCrescente Distrib. Co., Inc.*, 370 F. App'x 206, 212 (2d Cir. 2010). However, such informal complaints must be sufficiently specific to make it clear that the employee is complaining about prohibited conduct. *Risco v. McHugh*, 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012). When making an informal complaint, "[t]he onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to [her] membership in a protected class and that [s]he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F.Supp.2d 289, 308–09 (S.D.N.Y. 2009); *see also Drumm v. SUNY Geneseo Coll.*, 486 F. App'x 912, 914 (2d Cir. 2012) ("[P]laintiff's allegations that her supervisor 'berated' her and made other harsh comments . . . amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination.").

While an employee is not required to "mention discrimination or use particular language" for her complaint to constitute a protected activity, *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F.Supp.2d 345, 357 (S.D.N.Y. 2007), a plaintiff must have articulated the substance of her complaint in such a way that her employer would "reasonably underst[and]" that it was about unlawful discrimination against her. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2020 WL 6274826, at *33 (S.D.N.Y. Oct. 24, 2020). Conversely, a complaint to an employer that uses "particular words such as 'discrimination'" is not alone sufficient to put the employer on notice of the employee's protected activity "if nothing in the substance of [that] complaint suggests that the complained-of activity is . . . unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013).

Here, three of Plaintiff's four complaints lacked the specificity required to qualify them as protected. During Plaintiff's November 2018 meeting with Yip, she complained about D'Angelo's management style in comparison to that of her previous supervisor and sought advice on how to better work with him. (Yip Dep. Tr. at 105:5–12.) During the meeting, she told Yip that D'Angelo was contemptuous, critical, and harsh towards her alone, and that she felt "targeted." (Goldzweig Dep. Tr. at 294:8–10; 377:15–18) ("I didn't see the way in which he was treating me to be applied to either the men in my group or the women in my group . . . I was coming to him because I felt targeted.") However, Plaintiff failed to connect her treatment to any protected characteristics. Thus, Plaintiff's meeting with Yip was not a protected activity. *See Johnson v. City Univ. of N.Y.*, 48 F.Supp.3d 572, 577 (S.D.N.Y. 2014) ("[I]t is objectively unreasonable to believe that complaining about poor treatment in the workplace entirely unrelated to any trait, protected or otherwise, is a 'protected activity.'").

During Plaintiff's December 31 meeting with the ODI, she complained that D'Angelo was "difficult, nasty, and disrespectful." (Iadevaia Decl., Ex. 54 at 1.) "Although she stated that she was Jewish, she could not say the behavior was related to any of her protected characteristics[] (age, gender, or religion)." (Iadevaia Decl., Ex. 54 at 1.) Plaintiff again failed to connect her alleged mistreatment to any protected class membership. *See Aspilaire*, 612 F.Supp.2d at 308–09 ("The onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to [her] membership in a protected class and that [s]he is not complaining merely of unfair treatment generally.").

Plaintiff's second ODI complaint on January 2, 2019 similarly failed to constitute a protected activity. Plaintiff complained that D'Angelo was "difficult to work with, hostile and disrespectful." (Iadevaia Decl., Ex. 54 at 2.) While Plaintiff made the statement "I'm a 64 year old

Jewish woman" three times during her interview, she stated that she did not know if D'Angelo's treatment was because of those characteristics. (Iadevaia Decl., Ex. 54 at 4.) The invocation of her protected characteristics without more is insufficient to establish a protected complaint. *Aspilaire*, 612 F. Supp. 2d at 310 ("Put simply, it is not the constitution of the complaining group that renders speech protected, but rather the articulated complaint itself.").

Defendant does not dispute, and this Court agrees, that Plaintiff's December 2018 conversation with Richard Levin qualifies as a protected complaint. Plaintiff sufficiently articulated to Levin during their meeting that she believed D'Angelo treated her differently than her colleagues because of her age, religion, and gender. (Levin Dep. Tr. at 332:13–15) ("I think she said something to the effect that he's picking on me because I'm Jewish, I'm old and I'm a woman.") Thus, the Court's retaliation analysis proceeds only as to Plaintiff's complaint to Levin.

In arguing that Defendant retaliated against her, Plaintiff points to the close temporal proximity between her protected complaint to Levin and her termination. (Opp. at 24.) Assuming *arguendo* that Plaintiff has established a prima facie case of retaliation, Plaintiff's claims still fail because Defendant has adduced sufficient evidence of a legitimate, non-discriminatory reason for its actions that Plaintiff fails to show are pretextual.

A defendant may articulate a legitimate reason for a plaintiff's termination based on evidence of the plaintiff's unsatisfactory job performance, including problems with her work quality. *See Goonewardena v. New York Workers Compensation Board*, 258 F.Supp.3d 326, 338 (S.D.N.Y. 2017) (noting that employer had documented concerns about employee's performance long before he made complaints). Here, Defendant has presented ample evidence of the Law Department's sustained concerns with Plaintiff's performance through a combination of documentary evidence and deposition testimony. Defendant presented testimony from former Law

Department senior leaders Moore and Taylor regarding their concerns with Plaintiff's written and verbal communication, and ability to work with outside counsel. (SOMF ¶¶ 67, 106, 113, 120.) Defendant also presented evidence that Plaintiff's direct managers perceived similar issues with Plaintiff's performance. Scotti testified that he became aware of deficiencies with Plaintiff's communication skills as early as 2002. (Scotti Dep. Tr. at 97:23–98:23, 100:2–8.) He also testified that during the period in which he supervised Plaintiff from 2016 to 2018, he "thought her drafting skills were poor." (Scotti Dep. Tr. at 102:15–16.) Finally, D'Angelo testified that when he assumed management of Plaintiff in 2018, he became aware of issues with Plaintiff's written and verbal skills, and believed there were instances in which Plaintiff was unable to provide clear and direct answers to questions. (SOMF ¶¶ 31, 179.)

Defendant has also submitted documentary evidence of Plaintiff's performance problems, in particular, a series of performance reviews issued by her supervisors Levin and Scotti. For example, Plaintiff's 2015 Mid-Year Review determined that she was "not on target" to meet her developmental goals for the year. (SOMF ¶¶ 98, 99.) The Review noted that "significant and sustained improvement [was] needed." (Iadevaia Decl., Ex. 60 at 2.) Additionally, Plaintiff's 2015 end of year Performance Review listed an overall rating of "Needs Some Improvement." (SOMF ¶ 101.) Also in 2015, Taylor memorialized a verbal counseling regarding a complaint from outside counsel that Plaintiff's treatment towards an associate was "unprofessional, inappropriate, and unacceptable." (*Id.* ¶¶ 109, 111, 113.) Finally, Plaintiff's 2017 Performance Review noted that she needed to "continue working on developing a more structured and linear approach to advice-giving, whether oral or written." (Iadevaia Decl., Ex. 17 at 2.)

Defendant's articulated reason for terminating Plaintiff is also reflected in D'Angelo's termination talking points. D'Angelo's talking points cited to Plaintiff's performance issues,

including her ineffective communication skills and interactions with outside counsel, as reasons for her termination. (SOMF ¶ 169; Pierre Decl., Ex. GG at 2–3.) Defendant's consistent documentary evidence and deposition testimony is sufficient to show a legitimate, nondiscriminatory reason for Plaintiff's termination.

Plaintiff may rebut Defendant's proffered reason for termination with evidence that such reason was pretextual or that the termination was also motivated, at least in part, by unlawful retaliatory animus. *See Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). In cases concerning poor job performance, the fact that an employee "disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." *Kalra v. HSBC Bank USA, N.A.*, 567 F.Supp.2d 385, 397 (E.D.N.Y. 2008); *Randall v. Potter*, No. 01-CV-2097 (THK), 2004 WL 439491, at *5 (S.D.N.Y. Mar. 9, 2004) (finding that even if employer terminated employee based on an incorrect belief that the employee had engaged in improper conduct, that belief did not establish an inference of discrimination). Moreover, when evidence of such negative performance is presented, "[d]emonstration of past positive performance is insufficient to raise a genuine issue of disputed issue of fact with respect to pretext." *Mattera*, 740 F. Supp. 2d at 577 (citation omitted). Thus, "[t]he employer could terminate the plaintiff for a good reason, a bad reason, or no reason at all, so long as it was not a [retaliatory] reason. . . . It is not for the Court to second-guess the business judgment for a termination, so long as there is no evidence that the reason for the decision was a pretext for [retaliation]." *Delaney*, 908 F. Supp. 2d at 518 (S.D.N.Y. 2012) (quoting *Slatky v. Healthfirst, Inc.*, No. 02-CV-5182 (JGK), 2003 WL 22705123, at *5 (S.D.N.Y. Nov. 17, 2003)).

Here, Plaintiff has made no showing of pretext. Plaintiff's argument for pretext largely rests on her contention that her job performance was in fact positive. (Opp. 15–16, 25.) However, such a contention is insufficient to show pretext. *See Mattera*, 740 F. Supp. 2d at 577 (finding that "[d]emonstration of past positive performance is insufficient to raise a genuine issue of disputed issue of fact with respect to pretext."); *see also Kalra*, 567 F.Supp.2d at 397. Importantly, Plaintiff does not dispute that Defendant has presented both documentary evidence and deposition testimony detailing concerns with her performance. (*See* Opp. at 15–16.) Consequently, Plaintiff's attempt to show pretext on the grounds that Defendant's concerns with her performance did not justify her termination is insufficient to avoid summary judgment. *Delaney*, 908 F. Supp. 2d at 518 ("[t]he employer could terminate the plaintiff for a good reason, a bad reason, or no reason at all, so long as it was not a [retaliatory] reason."). Plaintiff's Third, Fourth, and Sixth Causes of Action must be dismissed.

### D. Retaliation Under the NYCHRL

Plaintiff also asserts a retaliation claim against Defendant pursuant to the NYCHRL. The NYCHRL is slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an adverse employment action, it only requires action that was "reasonably likely to deter a person from engaging in protected activity." *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (citation omitted). Otherwise, the burden shifting framework is the same under the NYCHRL as under the NYSHRL. *See id.*

As with Plaintiff's federal and state law claims, her city law retaliation claim fails. For the purposes of this case, the NYCHRL's lesser standard of conduct that was "reasonably likely to deter a person" from engaging in action opposing her employer's discrimination does not impact this Court's analysis. As discussed above, Plaintiff has failed to show that Defendant's

nondiscriminatory reason for her termination is pretext. Thus, Plaintiff's Eighth Cause of Action must be dismissed.

## IV.    CONCLUSION

Defendant's motion for summary judgment, (ECF No. 83), is GRANTED.  The Clerk of Court is directed to close the motion, and this case, accordingly.

Dated: New York, New York
      December 10, 2024

SO ORDERED.

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge