UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SHARON GOLDZWEIG,                                              Case No. 1:20-cv-04297

                       Plaintiff,

         - against -

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC.,

                       Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


========================================================

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

========================================================


VLADECK, RASKIN & CLARK, P.C.
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300


Of Counsel:
    Jeremiah Iadevaia
    Emily Bass

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 1

    The Labor and Employment Group ........................................................................................... 1

    Plaintiff's Success at Con Edison ............................................................................................... 2

    Con Edison's Retaliatory Policies and Practices ........................................................................ 3

    Goldzweig's Multiple Discrimination Complaints ..................................................................... 3

    Defendant Unlawfully Fires Goldzweig ..................................................................................... 5

PROCEDURAL BACKGROUND.................................................................................................. 6

ARGUMENT .................................................................................................................................. 7

I.     THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
      JURISDICTION OVER GOLDZWEIG'S NYCHRL CLAIMS.......................................... 7

II.    IF THIS COURT MAINTAINS JURISDICTION, IT SHOULD DENY
      SUMMARY JUDGMENT ON PLAINTIFF'S NYCHRL CLAIMS ...................................11

    A.   Legal Standards ......................................................................................................... 11

         i.    Summary Judgment on NYCHRL Claims...............................................................11

         ii.   Retaliation Under the NYCHRL.......................................................................... 12

    B.   A Jury Could Find that Con Edison Retaliated Against Goldzweig
        Under the NYCHRL.................................................................................................. 12

         i.    There Is No Dispute That Goldzweig Engaged in Protected Activity .................. 12

         ii.   Goldzweig Can Establish Causation...................................................................... 15

             1. Con Edison's Much-Disputed Timeline............................................................. 17

             2. Con Edison Was Aware of Goldzweig's Complaints ....................................... 19

         iii.  There is Ample Evidence of Pretext ..................................................................... 21

             1. Plaintiff's Strong Track Record ......................................................................... 21

             2. Defendant's Inconsistencies Demonstrate Pretext ............................................ 23

             3. Defendant Failed to Follow Its Policies............................................................. 25

CONCLUSION............................................................................................................................. 26

TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Albunio v. City of New York,
16 N.Y.3d 472 (2011) ..................................................................................................13, 14

Allard v. Arthur Anderson & Co. (U.S.A.),
957 F. Supp. 409 (S.D.N.Y. 1997) ........................................................................................9

Banks v. Gen. Motors, LLC,
81 F.4th 242 (2d Cir. 2023) ...........................................................................................11, 20

Bart v. Golub Corp.,
96 F.4th 566 (2d Cir. 2024) .................................................................................................11

Bennett v. Health Mgmt. Sys., Inc.,
936 N.Y.S.2d 112 (N.Y. App. Div. 1st Dep't 2011) ...........................................................12

Bohlinger v. Abbott Lab'ys Inc.,
843 F. App'x 374 (2d Cir. 2021).........................................................................................24

Brightman v. Prison Health Serv., Inc.,
108 A.D.3d 739 (2013) .......................................................................................................20

Brown v. Crowdtwist,
2014 WL 1468145 (S.D.N.Y. Apr. 15, 2014).....................................................................12

Brown v. UPS United Parcel Serv. Incorp.,
2022 WL 16734876 (N.D.N.Y. Nov. 7, 2022) ...................................................................20

Campbell v. Cellco P'ship,
2012 WL 3240223 (S.D.N.Y. Aug. 6, 2012).......................................................................23

Catzin v. Thank You & Good Luck Corp.,
899 F.3d 77 (2d Cir. 2018) ...................................................................................................9

Chenensky v. New York Life Ins. Co.,
942 F. Supp. 2d 388 (S.D.N.Y. 2013).................................................................................8, 9

Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.,
444 F.3d 158 (2d Cir. 2006).................................................................................................18

Culleton v. Honeywell Int'l, Inc.,
257 F. Supp. 3d 333 (E.D.N.Y. 2017) .................................................................................22

Delaney v. Bank of Am. Corp.,
    766 F.3d 163 (2d Cir. 2014)................................................................................9

Delville v. Firmenich Inc.,
    920 F. Supp. 2d 446 (S.D.N.Y. 2013).........................................................17, 21

Desert Palace, Inc. v. Costa,
    539 U.S. 90 (2003)..........................................................................................20

Dillon v. Ned Mgmt., Inc.,
    85 F. Supp. 3d 639 (E.D.N.Y. 2015) ..............................................................23

Dingle v. Riverbay Corp.,
    2024 WL 1348491 (S.D.N.Y. Mar. 29, 2024) .................................................19

Edelman v. NYU Langone Health Sys.,
    141 F.4th 28 (2d Cir. 2025) ............................................................................19

Farzan v. Wells Fargo Bank, N.A.,
    2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013) ..................................................14

Green v. United States,
    2018 WL 5624106 (E.D.N.Y. Jan. 29, 2018) ..................................................10

Griffin v. Ambika Corp.,
    103 F. Supp. 2d 297 (S.D.N.Y. 2000)............................................................22

Grillo v. New York City Transit Auth.,
    291 F.3d 231 (2d Cir. 2002)............................................................................17

Gupta v. Al Jazeera Am., LLC,
    2018 WL 1605571 (S.D.N.Y. Mar. 29, 2018) ................................................15

Hampton v. Jud. Branch,
    2023 WL 4304752 (D. Conn. June 30, 2023).................................................7, 8

Hexemer v. Gen. Elec. Co.,
    2015 WL 3948418 (N.D.N.Y. June 29, 2015).................................................18

Holleman v. Art Crating Inc.,
    2014 WL 4907732 (E.D.N.Y. Sept. 30, 2014) ...............................................24

Hubbard v Total Comm'n, Inc.,
    347 F. App'x 679 (2d Cir. Sept. 30, 2009) .....................................................14

Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007)............................................................13

iii

Jones v. City of New York,
    2023 WL 6205630 (2d Cir. Sept. 25, 2023) ..............................................................17

Kaiser v. Raoul's Rest. Corp.,
    112 A.D.3d 426 (2013) ........................................................................................22

Kaytor v. Elec. Boat Corp.,
    609 F.3d 537 (2d Cir. 2010).................................................................................11

Kirkland v. Cablevision Sys.,
    760 F.3d 223 (2d Cir. 2014).................................................................................22

Kolari v. New York-Presbyterian Hosp.,
    455 F.3d 118 (2d Cir. 2006)...................................................................................7

Kyzer v. Borough of Naugatuck,
    2022 WL 2802349 (D. Conn. July 18, 2022) .........................................................9

Lee v. Riverbay Corp.,
    751 F. Supp. 3d 259 (S.D.N.Y. 2024) (Def. Br. 14)..............................................15

Lioi v. New York City Dep't of Health & Mental Hygiene,
    914 F. Supp. 2d 567 (S.D.N.Y. 2012)..................................................................15

Lulo v. OTG Mgmt., LLC,
    2022 WL 409224 (S.D.N.Y. Feb. 10, 2022).........................................................19

Majors v. UVMC Mgmt., LLC,
    2022 WL 286908 (W.D. Tex. Jan. 31, 2022) .......................................................23

Maynard v. Montefiore Med. Ctr.,
    2021 WL 396700 (S.D.N.Y. Feb. 4, 2021)...........................................................20

Melman v. Montefiore Med. Ctr.,
    98 A.D.3d 107 (2012) .........................................................................................19

Meyer v. Shinseki,
    2016 WL 11263169 (E.D.N.Y. July 28, 2016)......................................................22

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
    715 F.3d 102 (2d Cir. 2013)........................................................................14, 15, 23

Milord-Francois v. New York State Off. of Medicaid Inspector Gen.,
    635 F. Supp. 3d 308 (S.D.N.Y. 2022)..................................................................11

Norton v. Town of Brookhaven,
    2023 WL 3477123 (2d Cir. May 16, 2023) ..........................................................10

Nunez v. New York State Dep't of Corr. & Cmty. Supervision,
    2017 WL 3475494 (S.D.N.Y. Aug. 11, 2017)................................................................8, 9

Ramos v. City of New York,
    1997 WL 410493 (S.D.N.Y. July 22, 1997) ...................................................................13, 14

Raymond v. City of New York,
    2022 WL 2532467 (S.D.N.Y. July 7, 2022) ...................................................................10

Recoop LLC v. Outliers Inc.,
    2025 WL 3154467 (S.D.N.Y. Nov. 11, 2025)..................................................................7, 10

Redd v. N.Y. Div. of Parole,
    678 F.3d 166 (2d Cir. 2012)............................................................................................11

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133 (2000).........................................................................................................11

Richards v. Dep't of Educ. of City of New York,
    2022 WL 329226 (S.D.N.Y. Feb. 2, 2022)......................................................................17

Richmond v. Gen. Nutrition Ctrs, Inc.,
    2011 WL 2493527 (S.D.N.Y. June 22, 2011) .................................................................16

Rodriguez v. City of New York,
    644 F. Supp. 2d 168 (E.D.N.Y. 2008) ............................................................................18, 19

Rommage v. MTA Long Island Rail Rd.,
    No. 08-CV-836 DLI ALC, 2010 WL 4038754 (E.D.N.Y. Sept. 30, 2010)......................14

Ross v. Lichtenfeld,
    755 F. Supp. 2d 467 (S.D.N.Y. 2010)..............................................................................16

Sadallah v. City of Utica,
    383 F.3d 34 (2d Cir. 2004)...............................................................................................7

Sandiford v. City of N.Y. Dep't of Educ.,
    943 N.Y.S.2d 48 (N.Y. App. Div. 1st Dep't 2012) .........................................................12

Shi v. Bagatelle Int'l, Inc.,
    2023 WL 4187557 (S.D.N.Y. June 26, 2023) .................................................................13

Sklaver v. Casso-Solar Corp.,
    2004 WL 1381264 (S.D.N.Y. May 15, 2004) ..................................................................26

Slattery v. Swiss Reinsurance Am. Corp.,
    248 F.3d 87 (2d Cir. 2001)...............................................................................................19

v

Soules v. Town of Oxford,
    669 F. App'x 54 (2d Cir. 2016)..........................................................................................7

Spinelli v. City of New York,
    2016 WL 5476001 (S.D.N.Y. Sept. 29, 2016).................................................................22

St. Juste v. Metro Plus Health Plan,
    8 F. Supp. 3d 287 (E.D.N.Y. 2014) ..................................................................................8

Suggs v. Port Auth. of N.Y. & N.J.,
    1999 WL 269905 (S.D.N.Y. May 4, 1999) .....................................................................17

Sumner v. U.S.P.S.,
    899 F.2d 203 (2d Cir. 1990)............................................................................................17

Syeed v. Bloomberg L.P.,
    2022 WL 3447987 (S.D.N.Y. Aug. 17, 2022)............................................................13, 14

Talwar v. Staten Island Univ. Hosp.,
    2016 WL 1298969 (E.D.N.Y. Mar. 31, 2016).................................................................14

Tarshis v. Riese Org.,
    211 F.3d 30 (2d Cir. 2000)..............................................................................................25

Trane v. Northrop Grumman Corp.,
    94 F. Supp. 3d 367 (E.D.N.Y. 2015) ..............................................................................22

Triola v. Snow,
    289 F. App'x 414 (2d Cir. 2008) .....................................................................................19

Vargas v. Morgan Stanley,
    2011 WL 4435923 (S.D.N.Y. Sept. 23, 2011)..................................................................8

Vargas v. Morgan Stanley,
    438 F. App'x 7 (2d Cir. 2011)...........................................................................................8

Weiss v. JPMorgan Chase & Co.,
    332 F. App'x 659 (2d Cir. 2009) .....................................................................................26

White v. Pacifica Found.,
    973 F. Supp. 2d 363 (S.D.N.Y. 2013)..............................................................................22

Ya-Chen Chen v. City Univ. of New York,
    805 F.3d 59 (2d Cir. 2015) (Def. Br. 14).........................................................................15

Yang v. Navigators Grp., Inc.,
    674 F. App'x 13 (2d Cir. 2016).......................................................................................16

**STATUTES**

29 U.S.C. § 621 <u>et seq.</u>................................................................................................6

42 U.S.C. § 2000e <u>et seq.</u> Title VII....................................................................................6

N.Y. Exec. Law § 296 <u>et seq.</u>  ......................................................................................6

N.Y.C. Admin. Code § 8–101 <u>et seq.</u> ............................................................ *passim*

**OTHER AUTHORITIES**

Craig Gurian, <u>A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law</u>, 33 Fordham Urb. L.J. 255 (2006) ..........................................................14

PRELIMINARY STATEMENT

Sharon Goldzweig ("Plaintiff" or "Goldzweig") submits this Memorandum of Law in Opposition to the Supplemental Memorandum of Law in further support of the Motion for Summary Judgment of Defendant Consolidated Edison Company of New York, Inc. ("Defendant" or the "Company" or "Con Edison") (Dkt. 129) ("Def. Br.") following the January 5, 2026 decision from the U.S. Court of Appeals for the Second Circuit (Dkt. 123 ("Second Circuit Order")) vacating in part this Court's prior decision granting summary judgment. For the reasons below, this Court should decline to retain supplemental jurisdiction or, in the alternative, deny Defendant's motion for summary judgment as to Goldzweig's retaliation claims under the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 et seq. (the "NYCHRL").

STATEMENT OF FACTS

Goldzweig, a 71-year-old woman and practicing attorney, specializes in and has devoted her career to The Employee Retirement Income Security Act ("ERISA") and employee benefits. (Dkt. 100, "Pl. 56.1" ¶¶207-09) Before her employment at Con Edison, Goldzweig worked in government, in private practice, and as in-house ERISA counsel for nearly 15 years. (Id. ¶210) Con Edison hired Goldzweig as Associate Counsel in October 1999. (Id. ¶211) She worked there for nearly 20 years until Defendant fired her in January 2019. (Id.) She was responsible for employee benefits and tax matters. (Id. ¶¶212-25)

The Labor and Employment Group

Goldzweig's role was part of Con Edison's Labor and Employment Group ("L&E Group"), which was part of Con Edison's Law Department. (Id. ¶226) For most of Plaintiff's employment, Con Edison employed a second benefits attorney, including, from 2015 to 2018, Douglas Shelling ("Shelling"). (Id. ¶227)  Goldzweig had several supervisors, including the former L&E Group head

1

Steve Scotti ("Scotti") and current head Chris D'Angelo ("D'Angelo"). (Id. ¶¶230, 237, 263-64)

For many years, the head of L&E reported to Phyllis Taylor ("Taylor"), former Vice President of

Legal Services, who in turn reported to former General Counsel Elizabeth Moore ("Moore"). (Id.

¶¶25, 27, 232)

Plaintiff's Success at Con Edison

Goldzweig performed well and received positive feedback from her managers and

colleagues. (Id. ¶¶236-62) Scotti, former L&E head and plaintiff's supervisor, found Goldzweig's

performance satisfactory and said he and Goldzweig enjoyed "a lot of success together." (Id. ¶237)

Managers and internal clients praised Goldzweig's knowledge of her area of law and the

institution; her significant contributions to successful negotiation of collective bargaining

agreements; and her "good working relationships" with her colleagues and internal clients. (Id.

¶¶238-39, 241) During Goldzweig's tenure, there were no significant litigations against Con

Edison for her practice area, a rare achievement given the number of individuals the benefit plans

covered. (Id. ¶240) As a result, Con Edison paid lower fiduciary insurance premiums. (Id.) Also,

Goldzweig made efficient use of outside counsel, thus saving the Company money. (Id.)

Goldzweig's annual and mid-year evaluations were mostly positive, including in the years

immediately preceding her unlawful firing. (Id. ¶¶242-53) While the 2015 reviews were

unfavorable, each review thereafter recognized her improvement and good performance. (Id.

¶¶99, 101, 247-53) Goldzweig's mid-year review for 2016 reported that she was on track to meet

her annual objectives. (Id. ¶¶ 116, 119, 248) The next and final performance review Goldzweig

received was her 2017 annual evaluation. (Id. ¶¶251-54) Scotti and Taylor completed that review,

dated March 30, 2018 (id.), which was largely positive. Scotti wrote, inter alia, (id. ¶252):

> Sharon is very passionate about her work and she is committed to ensuring that the
> Company's plans comply with ERISA. She has a very broad knowledge about
> ERISA, the Affordable Care Act and related benefits/tax areas. She stays abreast of

2

the issues in her area . . . . Sharon is always accessible to her clients and considers the many legal requirements imposed by benefits related statutes, regulations, and other rulings when providing advice. Sharon makes herself available to other attorneys for consultation on matters that involve benefits issues and will spend time to address these issues with the attorneys.

Goldzweig also received merit-based compensation, including a "merit [salary] increase" every year at Con Edison, based on her supervisor's recommendation and Taylor's approval. (Id. ¶¶255-61) In March 2017, Scotti recommended a "merit increase" in recognition of Goldzweig's work on collective bargaining activities, collaboration with Shelling, and efforts to improve. (Id. ¶259) Goldzweig also received a "variable pay" bonus each year since 2003, which was awarded based on individual and Company performance. (Id. ¶¶260-61)

### Con Edison's Retaliatory Policies and Practices

During Goldzweig's tenure, Con Edison management used the phrase "toxic employees" to describe those who complained about work, including those who made protected bias complaints. (Id. ¶¶279-80) As a matter of practice, Con Edison encouraged managers to fire "toxic" employees. (Id. ¶¶281-82)

### Goldzweig's Multiple Discrimination Complaints

In late 2018, Con Edison hired D'Angelo to head the L&E Group. (Id. ¶263) From November 1, 2018 to January 3, 2019, Goldzweig reported to D'Angelo. (Id. ¶264) Almost immediately and before he had a chance to work with her, he was critical of her performance and of her personally. (Id. ¶¶265-75) He treated her with contempt he did not show to her younger and/or male peers. (Id.)

During her final two months at Con Edison, Goldzweig made multiple protected discrimination complaints concerning D'Angelo. (Id. ¶¶286-308) On November 30, 2018, Goldzweig told Nelson Yip ("Yip"), a Deputy Ombudsman, that D'Angelo had "targeted" her, including by treating her worse than the younger women and men in her group. (Id. ¶¶286-89)

3

Although Yip promised Goldzweig confidentiality, Yip's supervisor discussed Goldzweig's complaint with Moore. (Id. ¶290) Prior to her unlawful firing, Goldzweig also saw Yip and D'Angelo have a private conversation. (Id. ¶291)

Goldzweig complained directly to D'Angelo about his mistreating her. (Id. ¶292) Goldzweig asked D'Angelo if they could work on improving their relationship. (Id. ¶293) During the meeting, D'Angelo was not receptive. He interrupted her multiple times, crossed his arms, and told her, in sum and substance, "I think our discussion is done here." (Id. ¶294) Also, sometime between December 1 and December 18, 2018, Goldzweig complained about D'Angelo's mistreatment to Levin, then a L&E supervisor. (Id. ¶295) Goldzweig told Levin that, despite her hard work, D'Angelo was unduly critical, and that she believed the criticism was related to her age, gender, and religion. (Id. ¶296) Goldzweig also told Levin that she had complained about D'Angelo to the Ombud's office. (Id. ¶297) Levin, who considered D'Angelo a friend, met almost daily with him during this period. (Id. ¶300)

On December 31, 2018, Goldzweig complained to the Office of Diversity and Inclusion ("ODI") about D'Angelo's bias. (Id. ¶301) Goldzweig told ODI that he mistreated her because of her age and gender. (Id. ¶¶196, 302) Goldzweig, an experienced attorney, went to ODI to make a discrimination complaint. (Id. ¶¶54, 304) On January 2, 2018, she attended a follow-up meeting with ODI employee Robert Rodriguez ("Rodriguez") and stated that D'Angelo had been hostile and disrespectful; she provided other examples of the biased treatment. (Id. ¶¶305-07) Goldzweig told Rodriguez that she believed D'Angelo was discriminating on the basis of, inter alia, her race and gender, stating "I'm a 64 year old Jewish woman" at least three times. (Id. ¶¶ 198, 307) In violation of Con Edison's policy requiring ODI to investigate, ODI closed the complaint without further action. (Id. ¶308)

4

<u>Defendant Unlawfully Fires Goldzweig</u>

One day later, January 3, 2019, Con Edison fired Goldzweig during a meeting with HR and D'Angelo. (Id. ¶¶170, 318-19) D'Angelo said that Defendant was firing her based on her performance, including purported problems with her communications, status reports, internal client relationships, and outside counsel interactions, and that D'Angelo had consulted with Moore and Taylor about the decision. (Id. ¶¶319-20) D'Angelo told Goldzweig: "I have determined that these concerns continue to detract from your performance[;] [t]herefore, a determination has been made that the employment relationship is not working out for the company." (Id. ¶¶316-17, 320)

In contrast to D'Angelo's criticism, Goldzweig in her two most recent evaluations received praise concerning her communications. (Id. ¶¶46, 73, 90, 116, 248, 253) Defendant's purported bases for firing Goldzweig were inconsistent with Scotti's feedback, including that Goldzweig had "good working relationships" with internal clients and external counsel for Con Edison. (Id. ¶¶241, 332, 334)

Con Edison failed to follow its policies. (Id. ¶¶335-46) The Company has a progressive discipline policy, applicable to Goldzweig. (Id. ¶¶ 9, 19, 335) The policy outlines "corrective action" that the Company should take if an employee is underperforming, including requiring supervisors to assign a performance improvement notice ("PIN") to any employee rated "unsatisfactory." (Id. ¶340) Despite these policies, Con Edison never placed Goldzweig on a PIN, used an interim performance review, or otherwise warned her that her job was in jeopardy. (Id. ¶346)

When Defendant fired Goldzweig, there were no benefits attorneys in its legal department. (Id. ¶¶359, 366) Over a month after the discharge, on February 12, 2019, a fourth-year Proskauer associate significantly younger than Goldzweig, began a secondment as a benefits attorney. (Id.

5

¶¶172, 366) Nearly a year after firing Goldzweig, Con Edison hired a full-time benefits attorney. (Id. ¶¶173-74)

Con Edison has provided starkly different versions of the sequence of events that led to Goldzweig's firing. For example, the timeline described in Defendant's EEOC Position Statement (a document that D'Angelo described as "[not] accurate") was irreconcilable with the version that Moore, Taylor, and D'Angelo proffered during their depositions. (Id. ¶¶347-58)

PROCEDURAL BACKGROUND

Plaintiff brought this action to remedy discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. (the "ADEA"); the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (the "NYSHRL"); and the NYCHRL. On December 10, 2024, this Court granted in full Defendant's motion for summary judgment on Plaintiff's claims. Plaintiff appealed.

On appeal, the Second Circuit vacated this Court's decision as to Plaintiff's NYCHRL claims, finding that Goldzweig's NYCHRL claims had not been independently and separately analyzed as required under the NYCHRL. (Order 10)[1] The Second Circuit instructed this Court on remand to determine whether to exercise supplemental jurisdiction over this claim, and if it does so, to "consider the claim under the appropriate standard, separate and apart from the federal and state claims." (Id.)

---

[1] The Second Circuit affirmed this Court's decision as to Goldzweig's federal and state law claim and as to Goldzweig's discrimination claim under the NYCHRL. (Second Circuit Order 6-8)

6

ARGUMENT

I.   THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER GOLDZWEIG'S NYCHRL CLAIMS

Where, as here, a District Court has dismissed all claims over which it has original jurisdiction, a District Court has discretion, considering the "values of judicial economy, convenience, fairness, and comity," to decline to exercise supplemental jurisdiction. Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006); see also Second Circuit Order at 10 (remanding to the District Court "to determine whether to exercise supplemental jurisdiction over this claim"). In the "unusual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining jurisdiction over the remaining state-law claims." Recoop LLC v. Outliers Inc., 2025 WL 3154467, at *4 (S.D.N.Y. Nov. 11, 2025) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)); Soules v. Town of Oxford, 669 F. App'x 54, 57 (2d Cir. 2016) (same).

This is the "unusual" case wherein there are no longer federal claims and the Court should decline to exercise supplemental jurisdiction. As Defendant concedes (Def. Br. 4), this Court had subject matter jurisdiction over Plaintiff's Title VII and ADEA solely based on federal question jurisdiction with supplemental jurisdiction over the NYSHRL and NYCHRL claims. (ECF No. 1 ¶ 4, 101). All of Plaintiff's federal claims have now been dismissed. And the "balance of factors [] weigh[] in favor of declining to exercise supplemental jurisdiction. Hampton v. Jud. Branch, 2023 WL 4304752, at *14 (D. Conn. June 30, 2023) (declining to exercise supplemental jurisdiction where "the sole claim conferring jurisdiction on this Court will be dismissed."); Sadallah v. City of Utica, 383 F.3d 34, 40 (2d Cir. 2004) ("[B]ecause plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court.").

7

First, the interests of comity would be best served by declining to exercise supplemental jurisdiction so that this case may be brought in state courts. See Chenensky v. New York Life Ins. Co., 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) ("State judges are the best arbiters of state law and comity weighs in favor of state decisions being interpreted by state judges."); Hampton, 2023 WL 4304752, at *14 (State courts are "more suited to determine the viability of Plaintiff's remaining claim.").

Also, contrary to Defendant's contention (Def. Br. 5), Plaintiff's NYCHRL claims present "novel issues" of local law.[2] In particular, the NYCHRL retaliation claim requires a separate analysis from its federal counterparts. (Second Circuit Order 9); see Nunez v. New York State Dep't of Corr. & Cmty. Supervision, 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11, 2017), aff'd sub nom. Nunez v. Lima, 762 F. App'x 65 (2d Cir. 2019) (declining to exercise supplemental jurisdiction over claims under the NYCHRL after federal claims were dismissed because NYCHRL claims "are subject to a different standard and must be analyzed separately.");[3] St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 334 (E.D.N.Y. 2014) (declining to exercise supplemental jurisdiction over NYCHRL claims after federal claims were dismissed). As the Court in Nunez discussed, "because the law governing claims under the NYCHRL is still developing,"

---

[2] By contrast, in Vargas v. Morgan Stanley, 2011 WL 4435923, at *1 (S.D.N.Y. Sept. 23, 2011) (Def. Br. 7), the Second Circuit on appeal vacated the dismissal without a detailed discussion of the potential unique issues posed under the NYCHRL. Vargas v. Morgan Stanley, 438 F. App'x 7, 10 (2d Cir. 2011) Here, by contrast, the Second Circuit carefully analyzed Goldzweig's NYCHRL claims, including dismissing the NYCHRL discrimination claims (Second Circuit Order 8-10), and, unlike in Vargas, required not just consideration generally of the special standards under the NYCHRL but specific differences that may affect the outcome here.

[3] Defendant's case supports Plaintiff's argument. In Nunez, 2017 WL 3475494, at *4 (cited by Defendant at Def. Br. 7), the Court chose to exercise supplemental jurisdiction over the plaintiff's NYSHRL claims because they would be subject to the same analysis as the plaintiff's Title VII claims, but "by contrast," the Court declined to exercise jurisdiction over the NYCHRL claims given the different standard applicable to NYCHRL claims.

8

NYCHRL claims present questions "best left to the courts of the State of New York." <u>Nunez</u>, 2017 WL 3475494, at *4.[4]

Also, although "some duplication of efforts is unavoidable if this action is dismissed and restarted," neither convenience nor fairness requires that this Court maintain jurisdiction. <u>Chenensky</u>, 942 F. Supp. 2d at 394. In particular, neither party will be prejudiced if Plaintiff re-files in state court. <u>Id.</u> While discovery and motion practice have already taken place in this federal matter, neither process need begin from scratch in state court. <u>See</u> <u>Allard v. Arthur Anderson & Co. (U.S.A.)</u>, 957 F. Supp. 409, 425 (S.D.N.Y. 1997) (noting that the "discovery taken in these cases would not be wasted if the cases were refiled in state court; it would be available for use there"). And importantly here, any state court proceeding would be to determine the "narrow retaliation claim" (Def. Br. 1) before it.[5]

Defendant's arguments urging the Court to retain jurisdiction are unavailing. For example, it argues, without citation to any authority (Def. Br. 5) that Goldzweig has "waived" her ability to

---

[4] For this reason, <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d 163, 170 (2d Cir. 2014) (Def. Br. 7), which involved breach of contract claims and not claims under the NYCHRL, is inapplicable. Moreover, the Second Circuit in <u>Delaney</u> did not find appropriate the District Court's retaining supplemental jurisdiction, it merely found the District Court did not abuse its discretion in doing so. <u>Id.</u>

[5] Although Defendant correctly notes that this case has been pending for several years (Def. Br. 6), "length of time alone does not warrant the court's exercise of supplemental jurisdiction." <u>Kyzer v. Borough of Naugatuck</u>, 2022 WL 2802349, at *5 (D. Conn. July 18, 2022) (declining to exercise supplemental jurisdiction where federal claims were dismissed even though claims had been pending in federal court for nearly three years). Defendant's citation where the Court found supplemental jurisdiction appropriate based in part on the efforts already expended, <u>Catzin v. Thank You & Good Luck Corp.</u>, 899 F.3d 77, 86 (2d Cir. 2018) (Def. Br. 5), involved claims which, unlike here, were already set for trial and is otherwise inapposite. <u>Id.</u> (vacating decision where supplemental jurisdiction was revoked one day before the final pretrial conference and a week before the scheduled trial date, considering in particular that plaintiffs were immigrant laborers seeking unpaid wages and concerns that the parties would need to expend additional resources litigating the claims in state court).

contest jurisdiction because she brought her claims in federal court. Not so. It is black letter law that "[b]ecause it involves a court's power to hear a case, subject matter jurisdiction cannot be forfeited [or] waived . . ." Norton v. Town of Brookhaven, 2023 WL 3477123, at *5 (2d Cir. May 16, 2023) (vacating judgment of District Court exercising supplemental jurisdiction; parties' "mutual understanding" that District Court would maintain jurisdiction over pendent state law claims "does not alter [the] analysis" of whether exercise of jurisdiction was appropriate). Moreover, Defendant's argument that Goldzweig somehow failed to contest supplemental jurisdiction during summary judgment briefing and on appeal makes no sense. Prior to the Second Circuit Order, the Court was at no time in the "unusual" posture of having jurisdiction over only NYCHRL claims, see Recoop LLC, 2025 WL 3154467, at *4; thus, Goldzweig had no basis to contest jurisdiction before this motion.

Moreover, Defendant's argument that Goldzweig's NYCHRL claims will not "predominate" over her federal claims is inexplicable given that all of her federal claims have been dismissed. Indeed, in the single case[6] Defendant cites for the proposition that a Court should maintain supplemental jurisdiction when the state law claims do not "predominate" over the federal claims (Def. Br. 5), unlike here, involved active federal claims. See Green v. United States, 2018 WL 5624106, at *4 (E.D.N.Y. Jan. 29, 2018) ("Since this Court has original jurisdiction over plaintiff's [federal] claims against the United States, it can properly exercise supplemental

---

[6] Defendant misstates the holding of its other citation, Raymond v. City of New York, 2022 WL 2532467, at *27 (S.D.N.Y. July 7, 2022) (Def. Br. 6). There, the Court declined in part to exercise supplemental jurisdiction over Plaintiff's NYCHRL discrimination claims, finding that the claims "predominate[d] over the [since dismissed federal claims] over which the District Court had original jurisdiction, finding that certain claims would be "most efficiently, fairly, and consistently adjudicated together in another forum of competent jurisdiction." Raymond, 2022 WL 2532467, at *27.

10

jurisdiction over any other claims that are so related to those claims."). And in Milord-Francois v. New York State Off. of Medicaid Inspector Gen., 635 F. Supp. 3d 308, 317 (S.D.N.Y. 2022) (Def. Br. 7) the District Court exercised supplemental jurisdiction over the NYCHRL claims where the federal claims remained after the Second Circuit had vacated the District Court's order dismissing them. Id.

II.     IF THIS COURT MAINTAINS JURISDICTION, IT SHOULD DENY SUMMARY JUDGMENT ON PLAINTIFF'S NYCHRL CLAIMS

A.  Legal Standards

i.  Summary Judgment on NYCHRL Claims

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012) (internal quotations and citations omitted); see also Bart v. Golub Corp., 96 F.4th 566, 569-70 (2d Cir. 2024); Banks v. Gen. Motors, LLC, 81 F.4th 242, 258 (2d Cir. 2023). The Court "may not . . . consider the record in piecemeal fashion . . . rather, it must review all of the evidence." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (internal quotation marks and citation omitted). The evidence must be assessed "in the light most favorable" to the non-movant, drawing "all reasonable inferences in favor of the nonmoving party." Moll, 94 F.4th at 226-27 (citations omitted). A court may not give credence to the moving party's evidence unless it comes from "disinterested witnesses" and is neither contradicted nor impeached. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). "[A]n extra measure of caution is merited before granting . . . summary judgment in a discrimination action because direct evidence of discriminatory intent is rare." Moll, 94 F.4th at 228 (internal quotations and citations omitted).

Under the NYCHRL, a court "must" deny summary judgment if the "plaintiff 'responds with some evidence that at least one of the reasons proffered by defendant is false, misleading, or

11

incomplete.'" <u>Sandiford v. City of N.Y. Dep't of Educ.</u>, 943 N.Y.S.2d 48, 51 (N.Y. App. Div. 1st Dep't 2012) (quoting <u>Bennett v. Health Mgmt. Sys., Inc.</u>, 92 A.D.3d 29, 43 (N.Y. App. Div. 1st Dep't 2011)), <u>aff'd</u>, 22 N.Y.3d 914 (N.Y. 2013); <u>see also</u> <u>Bennett</u>, 92 A.D.3d at 44 ("evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied"); <u>Brown v. Crowdtwist</u>, 2014 WL 1468145, at *5 (S.D.N.Y. Apr. 15, 2014) ("Under the NYCHRL, when a plaintiff makes a reasonable showing that one of his employer's explanations is false or misleading, he is generally entitled to have a jury consider whether this false explanation is evidence of consciousness of guilt or a discriminatory motive.").

ii.    Retaliation Under the NYCHRL

As explained in the Second Circuit Order and as Defendant concedes (Order 8; Def. Br. 8), NYCHRL retaliation claims are subject to a "more liberal" standard than their federal counterparts. Defendant "bears the burden of showing that, based on the evidence before the court and drawing all reasonable inferences in plaintiff's favor, no jury could find defendant liable under any of the evidentiary routes: under the <u>McDonnell Douglas</u> test, or as one of a number of mixed motives, by direct or circumstantial evidence." <u>Bennett</u>, 92 A.D.3d at 40.  Defendant cannot meet its burden here.

B.  <u>A Jury Could Find that Con Edison Retaliated Against Goldzweig Under the NYCHRL</u>

i.    <u>There Is No Dispute That Goldzweig Engaged in Protected Activity</u>

Con Edison admits that Goldzweig engaged in protected activity when she complained to her former supervisor Levin in or around December 2018. (Pl. 56.1 ¶¶ 189-191, 295-300)[7]

---

[7] Indeed, Levin testified that Goldzweig complained to him that D'Angelo was unduly critical because of her age and gender. (Pl. 56.1 ¶¶295-96)

12

However, Con Edison improperly seeks to narrow Goldzweig's protected activity by excluding her complaints to the Con Edison's Ombudsman and ODI. Con Edison's arguments fail.

It is well established that "the NYCHRL takes a broader approach than Title VII or the ADEA as to what constitutes a protected activity for the purpose of a retaliation claim." (Second Cicruit Order 9); see, e.g., Albunio v. City of New York, 16 N.Y.3d 472, 476 (2011) ("Bearing in mind the broad reading that we must give to the New York City Human Rights Law" an employee could be found to have "opposed" discrimination by communicating that they thought treatment of a co-worker was wrong); Syeed v. Bloomberg L.P., 2022 WL 3447987, at *7 (S.D.N.Y. Aug. 17, 2022), reversed in other part on reconsideration, sub nom. Ndugga v. Bloomberg L.P., 2023 WL 4744183 (S.D.N.Y. July 25, 2023) (recognizing that, under the NYCHRL, "the New York Court of Appeals has held that an employee can oppose his employer's discrimination without expressly mentioning discrimination as the source of his discontent").[8]

Particularly under these liberal standards, there can be no dispute that Plaintiff's complaints to the Ombudsman and to ODI constitute protected activity. Plaintiff alleged to Ombudsman officer Yip that D'Angelo was "targeting" her for worse treatment than younger and male L&E attorneys. (Pl. 56.1 ¶288)[9] Goldzweig's "comparisons to employees who were outside of [her]

---

[8] Defendant's cases where the Court found that Plaintiff had not engaged in protected activity under the NYCHRL (Def. Br. 9) involve far more ambiguous complaints that, unlike Plaintiff's, did not put the employer on notice that the employee was complaining about discrimination. See Shi v. Bagatelle Int'l, Inc., 2023 WL 4187557, at *9 (S.D.N.Y. June 26, 2023) (complaints about "general unfairness"); Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (recognizing that a protected complaint "need not mention discrimination or use particular language," but concluding that complaint that female employee was asked to perform administrative work was not a protected complaint because it did not notify employer that employee was complaining about sex discrimination).

[9] Defendant's cases cited to support its argument that Goldzweig's Ombudsman complaint is unprotected (Def. Br. 10) are inapposite. See Ramos v. City of New York, 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) (employee complained about "subtle tactics" manager was purportedly using against her and recipient of the complaint reasonably concluded that that employee "disliked

protected class" "should have put Defendant[] on notice that [she] was complaining about unlawful discrimination, rather than unfair treatment generally."[10] Even more strained is Defendant's argument that Goldzweig's complaints to ODI are unprotected. Con Edison's own notes show that Goldzweig told ODI she believed that D'Angelo was targeting her because of her age and gender. (Pl. 56.1 ¶¶198-200, 302, 306-07) (Goldzweig stated three times, "I am a 64-year-old Jewish woman" and that the mistreatment could be related to one of those protected characteristics))[11]

_____

[his manager] for his own personal reasons"); Farzan v. Wells Fargo Bank, N.A., 2013 WL 6231615, at *28 (S.D.N.Y. Dec. 2, 2013) (threat of legal action, without any additional comment that could have been "understood to have been about race or other protected classifications," was insufficient to constitute protected activity). Moreover, Ramos was decided long before the passage of the New York City Local Civil Rights Restoration Act ("Restoration Act") that exhorted courts to analyze NYCHRL claims independently from their federal counterparts. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108-09 (2d Cir. 2013) (although, "for many years," courts "construed the NYCHRL to be coextensive with its federal and state counterparts, the Restoration Act amended the NYCHRL to require an independent analysis); see Craig Gurian, A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law, 33 Fordham Urb. L.J. 255 (2006) (discussing same)); see also Ramos, 1997 WL 410493, at *3 (no independent analysis of NYCHRL claims).

[10]Albunio, 16 N.Y.3d at 479 (Plaintiff engaged in protected activity where she "made clear her disapproval" of a discriminatory decision a coworker even though she "did not say in so many words that [the coworker] was a victim of discrimination."); Syeed, 2022 WL 3447987, at *7 (finding that plaintiff's complaints in which she reported that certain benefits had been given to male peers but not to her to be protected under the NYCHRL); see also Hubbard v Total Comm'n, Inc., 347 F. App'x 679, 681 (2d Cir. Sept. 30, 2009) (even under higher federal standard, complaint that "guys" received raises and plaintiff, a woman, did not was protected activity).

[11] Given Goldzweig's explicit invocation of her protected characteristics, Defendant's citation to Rommage v. MTA Long Island Rail Rd., 2010 WL 4038754, at *14 (E.D.N.Y. Sept. 30, 2010), aff'd, 452 F. App'x 70 (2d Cir. 2012) is inapposite. Id. (finding that plaintiff did not engage in protected activity where complaint made no reference to race or gender and plaintiff's only argument that her complaint was protected was that she "was an African American woman complain[ing] about the behavior of a Caucasian man."). Nor is Talwar v. Staten Island Univ. Hosp., 2016 WL 1298969, at *10 (E.D.N.Y. Mar. 31, 2016) analogous. Id. (plaintiff did not engage in protected activity where, unlike Goldzweig, she never mentioned her own protected characteristics as a potential basis for the disparate treatment to which she had objected).

14

The "context" of Goldzweig's ODI complaints eliminates any doubt they were protected activity. Gupta v. Al Jazeera Am., LLC, 2018 WL 1605571, at *16 (S.D.N.Y. Mar. 29, 2018) (under higher federal standards, a complaint that Plaintiff was "singled out" for "discriminatory treatment" constituted a protected race discrimination complaint even where the complaint did not refer to race). For the first time, Goldzweig, an experienced attorney, made a complaint to ODI, which is responsible for investigating bias concerns. (Def. 56.1 ¶192; Pl. 56.1 ¶54) Her reporting signaled to Defendant that Plaintiff opposed discrimination under the NYCHRL.

ii.    Goldzweig Can Establish Causation

Under the NYCHRL, retaliatory animus need not be a "but-for" cause or even a significant factor in the firing decision. The employer is liable where it merely treated the employee "less well, at least in part for a discriminatory reason." Mihalik, 715 F.3d at 110 & n.8; see also Lioi v. New York City Dep't of Health & Mental Hygiene, 914 F. Supp. 2d 567, 594 (S.D.N.Y. 2012) ("the applicable standard under the NYCHRL is materially different from the Title VII standard").

Tellingly, Defendant (as it did on appeal) misstates Goldzweig's burden on causation. Con Edison continues erroneously to argue that Goldzweig must show that her protected activity was "the motivating factor" of her termination." (Def. Br. 14; see id. 2) But the single case Defendant cites for this proposition is to the contrary. See Lee v. Riverbay Corp., 751 F. Supp. 3d 259, 275, 284 (S.D.N.Y. 2024) (Def. Br. 14) (noting "lenient" standard under NYCHRL: "the [unlawful] motive need only be 'one of the motivating factors'" rather than the "'sole motivating factor.'").[12]

Applying the correct standard here, Plaintiff has demonstrated that her protected complaints

---

[12] Nor does Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 76 (2d Cir. 2015) (Def. Br. 14) require Plaintiff to show that retaliation was "the" motivating factor for Defendant's conduct. Id. (recognizing that summary judgment is appropriate under the NYCHRL only where discrimination played "no role" in the decision).

15

led to her dismissal. The temporal proximity between Goldzweig's protected activity and her firing strongly supports causation. Between November 30, 2018 (her first bias complaint) and January 3, 2019 (her firing) (Pl. 56.1 ¶¶286, 318), Goldzweig repeatedly complained about age and gender bias, including to the Ombud office, Levin, and ODI. (Id. ¶¶286-308) Defendant fired Goldzweig one month after her initial protected activity and within a day of her most recent protected complaint. The timing, standing alone, raises an inference of retaliation at the prima facie stage.[13]

There is also evidence of Defendant's retaliatory animus. Defendant's managers frequently used "toxic" to describe employees who complained about the workplace, including those who alleged discrimination. (Pl. 56.1 ¶¶279-80) Defendant, in 2018 and 2019, encouraged managers to fire employees they deemed "toxic" by, inter alia, "simplifying termination guidelines." (Pl. 56.1 ¶ 281) Given this practice, a juror reasonably could find that after Goldzweig made multiple protected complaints, Defendant considered her a toxic employee who should be "removed" from Con Edison.[14]

D'Angelo's hostile treatment of Goldzweig following her protected complaints further supports her retaliation claims. After her protected complaint to the Ombud office and around the

---

[13] See, e.g., Yang v. Navigators Grp., Inc., 674 F. App'x 13, 15 (2d Cir. 2016) (a two week gap can support inference of retaliation); Gorzynski, 596 F.3d at 111 (four months); Gorman-Bakos, 252 F.3d at 555 (five months); Richmond v. Gen. Nutrition Ctrs, Inc., 2011 WL 2493527 (S.D.N.Y. June 22, 2011) (plaintiffs complained "'up until' their termination or with sufficient frequency that a reasonable fact-finder could infer a sufficiently close temporal proximity"); Ross v. Lichtenfeld, 755 F. Supp. 2d 467, 475 (S.D.N.Y. 2010) ("The six month gap between the time Ross asserts she made her last [complaints] and her termination would allow a reasonable jury to infer causation.").

[14] Although the Second Circuit found Con Edison's references to "toxic" employees to be insufficient to establish causation for the purpose of Goldzweig's federal claims (Second Circuit Order 7), it declined to separately opine as to whether this fact would weigh in favor of Goldzweig's NYCHRL claims, which of course are subject to more lenient standards. (Id. 8-10; see supra pp. 12; see also Second Circuit Order 10 (holding that Courts must "independently analyze[] the weight accorded to different forms of evidence under New York law").

time she complained to Levin, Goldzweig asked to meet with D'Angelo. (Pl. 56.1 ¶ 292) D'Angelo, however, was hostile, interrupting her, crossing his arms, and prematurely ending the discussion. (Id. ¶ 294)[15] A factfinder could conclude that D'Angelo was angry with Goldzweig for asserting her rights.[16]

Defendant's several arguments to the contrary (Def. Br. 11-15) are unavailing.

    1.  Con Edison's Much-Disputed Timeline

First, Defendant argues that General Counsel Moore and Vice President of Legal Services Taylor decided to terminate Goldzweig's employment in August or September 2018 prior to her protected complaints. (Def. Br. 11) This is far from established; as set forth in more detail below, there are numerous inconsistencies in Defendant's account of its decision to fire Goldzweig that cast doubt on Defendant's timeline. (see infra 23-25).  And although the Second Circuit found, for the purpose of Goldzweig's federal claims, that Defendant had sufficiently established that it decided to fire Goldzweig prior to her protected complaints (Order 5) it left for this Court to weigh Con Edison's evidence separately as it must do under the NYCHRL. (Order 10 n. 2 (noting that courts must "independently analyze[] the weight accorded to different forms of evidence under New York law").

---

[15] By contrast, none of Defendant's cases  (Def. Br. 24) involve evidence that a decision-maker became enraged with an employee in direct response to her protected complaints. Richards v. Dep't of Educ. of City of New York, 2022 WL 329226, at *19 (S.D.N.Y. Feb. 2, 2022) (denying in part retaliation claims where plaintiff alleged that she "endured the same [hostile] conduct before engaging in protected activity."); Jones v. City of New York, 2023 WL 6205630, at *2 (2d Cir. Sept. 25, 2023) (no evidence of retaliatory animus outside of four-month time gap between complaint and adverse action); Grillo v. New York City Transit Auth., 291 F.3d 231, 235 (2d Cir. 2002) (no evidence of unlawful animus).

[16] See Sumner v. U.S.P.S., 899 F.2d 203, 209 (2d Cir. 1990). ("war-like attitude" supported finding of animus); Delville v. Firmenich Inc., 920 F. Supp. 2d 446, 466 (S.D.N.Y. 2013) (employer's anger at plaintiff); Suggs v. Port Auth. of N.Y. & N.J., No. 97 Civ. 4026 (RPP), 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) (decisionmaker was angry at plaintiff).

Moreover, even if Con Edison had established under the NYCHRL that Moore and Taylor had previously determined Goldzweig was "unwilling to meet performance expectations"—which Defendant did not—the decision about Goldzweig's firing had been left open-ended, including as to "when the termination would be carried out." (Second Circuit Order 5);  see Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F.3d 158, 163 (2d Cir. 2006) (reasonable jury could find retaliation even where there had been an "informal decision" to eliminate employee's position prior to employee's protected complaints as decision was not yet final and employer was free to change its mind); Hexemer v. Gen. Elec. Co., 2015 WL 3948418, at *8 (N.D.N.Y. June 29, 2015) ("a factfinder could [] reasonably conclude that Plaintiff's termination within a week of her protected activity was motivated by retaliatory animus" even where there was evidence that employer had discussed firing employee prior to her protected complaints as "any plan to eliminate Plaintiff's position was only discussed in hypothetical terms [] and was not acted upon until immediately after Plaintiff complained about discrimination."); Rodriguez v. City of New York, 644 F. Supp. 2d 168, 193 (E.D.N.Y. 2008) (that employer had initially recommended employee's firing prior to protective activity "[was] not dispositive given (1) that it is undisputed that the final termination decision was not made until after the protected activity and (2) [there was] other evidence of causation[.]").

Indeed, as late as December 2018, Defendant does not appear to have finalized its decision to fire Goldzweig: although there was a December 21, 2018 email concerning severance for Goldzweig, it was not until January 2, 2019 that D'Angelo drafted an agreement for Goldzweig. Even the version drafted in early January omitted key terms like her final day and severance amount. (Pl. 56.1 ¶168) Con Edison has also drafted severance packages for employees who were not ultimately discharged. (Id.) A jury could find against this backdrop that Defendant had not, in

18

fact, committed to firing Goldzweig and decided to do so only after her protected complaint. [17]

    2.   <u>Con Edison Was Aware of Goldzweig's Complaints</u>

Second, Defendant erroneously denies that it was aware of Goldzweig's many protected complaints. But it is well established that "'[n]othing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.'" <u>Edelman v. NYU Langone Health Sys.</u>, 141 F.4th 28, 46 (2d Cir. 2025) (quoting <u>Summa v. Hofstra Univ.</u>, 708 F.3d 115, 125-26 (2d Cir. 2013) (denying summary judgment; knowledge of protected activity may be imputed to the employer when employee complained to a human resource manager)); <u>Triola v. Snow</u>, 289 F. App'x 414, 417 (2d Cir. 2008) (corporation had general corporate knowledge due to plaintiff's filing of first an informal and later a formal EEO complaint). Goldzweig made protected complaints of unlawful bias to the Ombud Office, ODI, and to Levin (a manager). (Pl. 56.1 ¶¶286-308) Thus, Con Edison, the corporate entity, was aware that Goldzweig engaged in protected activity.

Moreover, there is substantial evidence that other Con Edison employees may have told D'Angelo about Goldzweig's many complaints.  First, Ombud officer Yip and D'Angelo met after

---

[17] Not only had Defendant not finalized its decision to fire Goldzweig prior to her protected complaints, it had not taken any steps to warn her that her job was in jeopardy, including assigning her a PIN or using an interim performance review even thought it maintained policies that required such progressive discipline and even though it had taken such steps with respect to other underperforming attorneys. (56.1 ¶¶9, 19, 41, 45, 340, 343-46, 355) Accordingly, Defendant's invocation of <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001) (Def. Br. 12) is unavailing. <u>Id.</u> (employee could not establish causation where employer had engaged in an "extensive period of progressive discipline" before firing plaintiff). Nor are Defendant's other cases on this issue (Def. Br. 12) analogous. <u>See</u> <u>Dingle v. Riverbay Corp.</u>, 2024 WL 1348491, at *3 (S.D.N.Y. Mar. 29, 2024) (employer formally investigated employee's misconduct prior to protected complaint and determined that there were "clearly established [] policy violations"); <u>Lulo v. OTG Mgmt., LLC</u>, 2022 WL 409224, at *11 (S.D.N.Y. Feb. 10, 2022) (no evidence that employee had ever made a complaint); <u>Melman v. Montefiore Med. Ctr.</u>, 98 A.D.3d 107, 129 (2012) (employee was not fired following complaint; employer merely continued after employee's complaint the same course of conduct to which employee had previously objected).

19

Goldzweig's complaint but before her firing; and Moore learned about Goldzweig's complaint from the head of the Ombud's Office and "consult[ed] regularly" with D'Angelo about firing Goldzweig.  (Pl. 56.1 ¶¶290-91, 312) Second, Levin met with D'Angelo almost daily and considered him a friend.  (Id. ¶300) Third, ODI representative Rodriguez met with D'Angelo multiple times between D'Angelo's start date and Goldzweig's firing date.  (Id. ¶201)[18]

Finally, Defendant, again misstating Goldzweig's burden, argues that Goldzweig cannot prevail on her retaliation claims because she was not subject to "derogatory comments" about her protected complaint. (Def. Br. 13) Of course, even under the higher federal standard Plaintiff is not required to allege direct evidence of retaliation. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." (citations omitted)); Banks v. Gen. Motors, LLC, 81 F.4th 242, 258 (2d Cir. 2023) (plaintiff may prove discrimination with direct or indirect evidence).  And Defendant's cases (Def. Br. 13) are not to the contrary. Brown v. UPS United Parcel Serv. Incorp., 2022 WL 16734876, at *2 (N.D.N.Y. Nov. 7, 2022) (noting that an employee can demonstrate retaliation through either direct evidence or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence"); Maynard v. Montefiore Med. Ctr., 2021 WL 396700, at *11 (S.D.N.Y. Feb. 4, 2021) (causal connection can be established through direct or indirect evidence). Moreover, even if Goldzweig were required to allege direct evidence—and she is not—a factfinder could determine that Con Edison's internal references to employees who complained as "toxic" reflects

---

[18] Given the ample evidence that D'Angelo was aware of Goldzweig's protected complaints, Defendant's citation to Brightman v. Prison Health Serv., Inc., 108 A.D.3d 739, 742 (2013) is inapposite. Id. (no evidence that decision-makers were aware of protected activity).

a retaliatory animus. (See supra 16)[19]

        iii.     There is Ample Evidence of Pretext

The many inconsistencies and contradictions in Defendant's purportedly legitimate  basis for firing Goldzweig without more justify reinstatement of Goldzweig's NYCHRL claims. (Supra 12)

    1.  Plaintiff's Strong Track Record

Evidence of Goldzweig's good performance undermines Defendant's narrative (Def. Br. 15-18) that Goldzweig suffered from persistent performance issues that justified her termination. Her most recent reviews, including her mid-year review for 2016 and her 2017 annual review, are positive. (Pl. 56.1¶¶247-53) Plaintiff received merit-based compensation and praise from internal clients and managers and there were no major litigations involving Goldzweig's area. (Id. ¶¶238-41, 255-61)

To justify its decision, Defendant cites (Def. Br. 10) earlier evaluations, including nearly 20-year-old reviews. (See Def. Br. 15)  The evaluations between 2001 and 2003 are largely positive and do not reflect any serious performance concerns. (Pl. 56.1 ¶¶56-63) While there was some criticism in the 2014 review, Plaintiff received an overall rating of "Fully Effective" and merit-based compensation. (Pl. 56.1 ¶86)

Plaintiff's 2015 mid-year and annual evaluations are the only negative reviews Plaintiff received.  (Pl. 56.1 ¶¶242-53) A jury may find that those reviews had no bearing on the decision to fire Plaintiff and that Defendant is using them now to cover up bias. First, there was no discussion about firing Plaintiff until several years after those reviews. (Id. ¶262, 346) Second, "Needs Some Improvement" was not the lowest rating and did not trigger mandatory remedial

---

[19] Delville, 920 F. Supp. 2d at 460 (Internal company documents provided "examples of Defendant's preoccupation with the age of its employees" and could support an inference of bias).

action under the Company's policies. (Id. ¶¶335-46) Third, there is evidence that whatever those concerns, Plaintiff's performance had improved by her firing three years later. (Id. ¶¶247-53)

Defendant erroneously contends (Def. Br. 18) that Goldzweig's performance problems persisted until her firing, but cites no evidence. To the contrary, Plaintiff's 2016 mid-year review given in September 2016 stated she was "[o]n target to meet all [assigned goals]" and "[o]n target to meet all [other expectations and responsibilities]"; and she had "improved on" and "taken affirmative steps" to address prior concerns. (Pl. 56.1 ¶¶119, 248) Also, Scotti, in 2017, recommended that Goldzweig "receive a merit increase" due to her efforts to improve. (Id. ¶259) In the 2017 review, dated March 2018, Scotti lauded Goldzweig's progress towards previously assigned goals. (Id. ¶253) Based on the contradictory contemporaneous evidence,[20] a jury could find that Defendant's explanation is pretextual.[21]

---

[20] Thus, unlike Defendant's cases (Def. Br. 19), Goldzweig is not relying exclusively on her disagreement with Defendant's evaluation. Griffin v. Ambika Corp., 103 F. Supp. 2d 297, 308–09 (S.D.N.Y. 2000) (no evidence contradicting employer's poor performance assessment); Meyer v. Shinseki, 2016 WL 11263169, at *12 (E.D.N.Y. July 28, 2016) (same); White v. Pacifica Found., 973 F. Supp. 2d 363, 370 (S.D.N.Y. 2013) (unrebutted evidence that employee was underperforming, plaintiff primary faulted other factors outside of his control for his performance deficiencies); Trane v. Northrop Grumman Corp., 94 F. Supp. 3d 367, 378 (E.D.N.Y. 2015), aff'd, 639 F. App'x 50 (2d Cir. 2016) (ample contemporaneous evidence of poor performance with no support for plaintiff's assertion that criticisms were "false and unsubstantiated); Kaiser v. Raoul's Rest. Corp., 112 A.D.3d 426, 427 (2013) ("Following an investigation, which included two audits, defendants formed a good-faith belief that plaintiff kept inaccurate payroll records and embezzled funds"); Culleton v. Honeywell Int'l, Inc., 257 F. Supp. 3d 333, 345 (E.D.N.Y. 2017) (consistent negative feedback on employee's performance).

[21] Spinelli v. City of New York, 2016 WL 5476001, at *5 (S.D.N.Y. Sept. 29, 2016) (jury could find pretext despite a negative performance review where that evaluation was "contradicted by other contemporaneous evidence," including subsequent reviews showing improvement); see also Kirkland v. Cablevision Sys., 760 F.3d 223, 227 (2d Cir. 2014) (reversing summary judgment despite negative reviews, if jury credited at least some of plaintiff's evidence challenging the proffered reason, it could find discrimination); Campbell v. Cellco P'ship, 2012 WL 3240223, at *4 (S.D.N.Y. Aug. 6, 2012) (verdict supported where there was evidence that, inter alia, plaintiff "was doing well during the PIP—ranking first in November—yet the PIP was extended immediately following this ranking").

22

Moreover, even if some of Defendant's accusations concerning Plaintiff's performance were credited, Goldzweig "need not prove that the reason proffered by [Con Edison] for the challenged employment action was actually false or entirely irrelevant" to the decision to fire her. (Second Circuit Order 10); see Mihalik, 715 F.3d at 117 ("[W]hile we agree that the evidence of [employee's] poor performance was substantial, we also conclude that a jury could find, notwithstanding that poor performance, that [employer] was not yet ready to fire [employee] and that it did so only after [employee's supervisor] became angry [after employee's protected complaints] . . .  If a jury so found, it would be free to infer that [employer] is using [employee's] poor performance now as a mere cover-up for retaliation."); Dillon v. Ned Mgmt., Inc., 85 F. Supp. 3d 639, 665–66 (E.D.N.Y. 2015) (quoting same).

2. Defendant's Inconsistencies Demonstrate Pretext

Much evidence casts doubt on Defendant's contention that Moore and Taylor decided to fire Plaintiff in September 2018 without D'Angelo's input.  First, there is not a single shred of paper to show this. (Pl. 56.1 ¶352) A company as sophisticated as Con Edison undoubtedly would have contemporaneous writing about a decision to fire a long-term employee.[22]

Second, Defendant's current contention is contradicted by its earlier representations. Defendant claimed in its EEOC Position Statement[23] that "[i]n late November 2018, Mr. D'Angelo met with Ms. Taylor and Ms. Moore to discuss Ms. Goldzweig" and that "[g]iven her multi-year refusal to improve her performance, they agreed to terminate her employment once a secondment arrangement could be reached." (Pl. 56.1 ¶350) However, during depositions, Defendant's

---

[22] See Carlton, 202 F.3d at 137 ("If [plaintiff's] performance had declined, as defendant insists, it seems surprising that there was no contemporaneous proof of that fact.").

[23] Defendant's Position Statement is admissible as a "statement of a party opponent," among other reasons. Majors v. UVMC Mgmt., LLC, 2022 WL 286908, at *1 (W.D. Tex. Jan. 31, 2022).

witnesses testified that Moore and Taylor made the decision alone multiple months earlier in September 2018. (Id. ¶¶351-53) As D'Angelo conceded, the testimony directly contradicts Defendant's representations to the EEOC. (Id. ¶354) "From such discrepancies a reasonable juror could infer that the explanations given by [Con Edison] were pretextual." Kwan, 737 F.3d at 847; see also Carlton, 202 F.3d at 137 (inconsistency between employer's justifications for firing plaintiff presented to EEOC and in litigation were evidence of pretext).[24]

Further, D'Angelo's own words at the time of Plaintiff's firing contradict the testimony of Defendant's witnesses.  In his draft talking points for the firing meeting, D'Angelo admitted that he evaluated Goldzweig's performance, that he determined the problems were ongoing, and that, as a result, a decision to dismiss Plaintiff was made after "consulting [] with [Moore] and [Taylor]." (Pl. 56.1 ¶¶309-20)[25] Also, D'Angelo reviewed Plaintiff's performance reviews in November 2018. (Id. ¶356) A juror could find that if Defendant had already decided to fire Goldzweig, there would be no reason for D'Angelo to examine her reviews or otherwise evaluate her performance.[26]

---

[24] While the Second Circuit concluded that a jury could not find pretext based on these inconsistencies for the purpose of Goldzweig's federal and state law claims (Second Circuit Order 5), it did not separately analyze or reach any conclusions as to these discrepancies for the purpose of Plaintiff's NYCHRL claims. Moreover, the Second Circuit acknowledged that there may be some inconsistency in the statements by Con Edison and its decision-makers as to "when the termination would be carried out." (Second Circuit Order 5)

[25] Defendant's cases involve purported inconsistencies that are much less significant and are thus, inapposite. Holleman v. Art Crating Inc., 2014 WL 4907732, at *39 (E.D.N.Y. Sept. 30, 2014) (no dispute that plaintiff received counseling about performance problems; employee merely quibbled with whether the performance-related counseling was labeled "discipline"); Bohlinger v. Abbott Lab'ys Inc., 843 F. App'x 374, 380 (2d Cir. 2021) ("immaterial" differences in supervisors' accounts of adverse action).

[26] The Second Circuit did not address whether D'Angelo's talking points and conduct leading up to Goldzweig's firing may support a finding of pretext for the purpose of Goldzweig's NYCHRL claim. (See generally Second Circuit Order)

Defendant asserts (Def. Br. 20) that D'Angelo could not have been involved in the decision to fire Plaintiff because, shortly after he joined, he and Taylor met with Proskauer to secure a replacement for Goldzweig.  However, there is evidence that a Proskauer secondee was hired to assist, not to replace, Goldzweig. For most of Goldzweig's tenure, there were two attorneys handling employee benefits, but, by the fall 2018, Goldzweig was the only such attorney. (Pl. 56.1 ¶¶227, 359) Thus, a jury could find that Down, a fourth-year associate working part-time for Con-Ed, was not retained to replace Goldzweig, who was full-time with 40 years of experience. (Id. ¶¶364, 366)[27] Also, no one told Proskauer that Defendant planned to fire Goldzweig until after it happened. (Id. ¶161) Pretext may be inferred if, as here, "the proffered explanation in light of all the circumstances" is not "a rational one." Tarshis v. Riese Org., 211 F.3d 30, 37 (2d Cir. 2000), abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

### 3.      Defendant Failed to Follow its Own Policies

In firing Goldzweig, Defendant undisputedly failed to follow its own well-established policies and procedures. Until firing Plaintiff, Defendant did not alert her to the purported problems or that her job was in jeopardy. (Pl. 56.1 ¶¶346, 357-58) In 2018, Plaintiff's last full year, supervisors, including Scotti, D'Angelo, and Taylor, did not "counsel[]" or "coach[]" Goldzweig; did not issue counseling memoranda; did not implement formal disciplinary process (i.e., a letter of reprimand, suspension, reassignment, demotion or final notice); and did not give her a "remediation plan," "interim performance review," nor a PIN. (Id. ¶346) Those procedural irregularities show pretext.[28]

---

[27] The Second Circuit did not reach any conclusions as to whether the secondee may have been fired to supplement, rather than replace Goldzweig. (See generally Second Circuit Order)

[28] See Weiss v. JPMorgan Chase & Co., 332 F. App'x 659, 664 (2d Cir. 2009) pretext may be inferred "[w]here an employer's 'deviat[ion] from its normal decision-making procedures' resulted

By contrast, consistent with the Company's corrective action policy, attorneys in the L&E Group with significant performance deficiencies received notice of these issues before their dismissal.  For example, despite the documented deficiencies of Shelling (a younger man) and of another, substantially younger woman, Defendant did not fire them. (Pl. 56.1 ¶¶343-45) Instead, their supervisor warned them that their jobs were in jeopardy.  (Id.) A jury could infer pretext based on Defendant's total failure to adhere to its procedures as it relates to Plaintiff.[29]

CONCLUSION

For the foregoing reasons, and those in Plaintiff's 56.1 Statement and supporting evidence, Defendant's supplemental motion for summary judgment on Plaintiff's NYCHRL claims should be denied.

Dated:  New York, New York
        July 8, 2026

VLADECK, RASKIN & CLARK, P.C.

By:      /s _____
         Jeremiah Iadevaia
         Emily Bass
         Attorneys for Plaintiff

---

in . . . employment decision").

[29] See Sklaver v. Casso-Solar Corp., 2004 WL 1381264, at *6 (S.D.N.Y. May 15, 2004) (failure to follow progressive discipline policy evidenced pretext).

**LOCAL CIVIL RULE 7.1(C) CERTIFICATION**

I, Emily Bass, hereby certify that the foregoing Memorandum of Law complies with Local Civil Rule 7.1 and the Court's Individual Rule 4(b) in that the total number of words in this memorandum of law, exclusive of the caption, table of contents, table of authorities, and the signature block, is 8,728 words and 26 pages according to Microsoft Word. I further certify that the foregoing Memorandum of Law complies with the formatting requirements set forth in Local Civil Rule 11.1.

/s/

Emily Bass

27